STATE of Minnesota, Respondent,

v.

Reynaldo MORALES, Appellant.

No. C9–95–485.

Court of Appeals of Minnesota.

June 6, 1995.

James Y. Prichard, Asst. Rice County Public Defender, Northfield, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Jeffrey D. Thompson, Kevin P. Shea, Rice County Attys. Office, Faribault, for respondent.

Considered and decided by HUSPENI, P.J., and NORTON and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Reynaldo Morales claims the trial court erred in calculating the jail credit for his conviction for felony theft of a wedding

ring set. Minn.Stat. § 609.52, subds. 2(1), 3(2) (1992). We reverse and remand.

## FACTS

On January 14, 1994, Cynthia Kielmeyer reported the theft of a wedding ring set to Faribault police, stating she believed that her boyfriend, appellant Reynaldo Morales, had stolen it. After initially declining to pursue the matter, she again raised the issue with the police in May 1994. Through information she gained from an acquaintance, Kielmeyer told police that Morales had stolen the ring set and given or sold it to Henry Winter, who pawned or sold it. Police also learned that the diamond contained in the ring set had a lasered identification number.

On June 3, 1994, police contacted Henry Winter, who confirmed that he had received the ring set from Morales as repayment of a loan, and that he had later sold it to a Minneapolis jewelry store. The store confirmed that it had purchased the ring set from Winter on December 24, 1993. Also on June 3, police read Morales his Miranda rights and questioned him about the theft. At that time, he was being held in the Rice County Jail on another charge. He denied stealing the ring set.

Subsequent police investigation revealed that Kielmeyer denied giving Morales the ring set and another person confirmed that Morales had taken the ring set and had given it to Winter to sell.

Morales was charged with felony theft of the ring set on July 26, 1994 and made his first court appearance on July 27, 1994. *See* Minn.Stat. § 609.52, subds. 2(1), 3(2). He was released from prison on the unrelated offense in early October 1994, and pleaded guilty to theft of the ring set on December 16, 1994.

Morales' 21–month sentence was stayed on the condition that he complete five years of probation. The probation included 365 days in jail with all but 45 days suspended, including 67 days for time already served. He was also ordered to make restitution and refrain from using controlled substances. In calculating jail credit, the trial court included the days served between Morales' first appear-

ance on July 27, 1994 and his October 1994 prison release date for the unrelated offense.

## ISSUE

Did the trial court err in denying Morales' jail credit for time he spent in custody before being convicted on the felony theft offense?

## ANALYSIS

In imposing a sentence for a criminal offense, the trial court must "assure that the record accurately reflects all time spent in custody in connection with the offense or behavioral incident for which sentence is imposed." Minn.R.Crim.P. 27.03, subd. 4(B). "The decision to grant jail credit is not discretionary with the district court." *State v. Fritzke*, 521 N.W.2d 859, 861 (Minn.App. 1994) (citation omitted).

The calculation of jail credit "should not turn on matters that are subject to manipulation by the prosecutor." *State v. Folley*, 438 N.W.2d 372, 374 (Minn.1989). Even where there is no manipulation of the charging process by the prosecutor, but the result is the same as if the prosecutor deliberately attempted to manipulate the process, jail credit should be determined favorably to the defendant. *Id.* One of these events subject to the prosecutor's manipulation is a delay in issuing a criminal complaint. *State v. Arden*, 424 N.W.2d 293, 294 (Minn.1988).

Morales claims that his jail credit should begin on June 3, 1994, the date he claims probable cause arose, rather than the date of his first court appearance on the charge, July 27, 1994. On June 3, police investigation corroborated Kielmeyer's theft allegation through Winter's statement that Morales gave him the ring for repayment of a loan and that he later sold the ring to a jeweler. The jeweler verified that he had purchased a ring from Winter. The jeweler also traced the diamond in the ring through the lasered identification number. Importantly, police had questioned Morales on June 3 after reading him his Miranda rights, but he flatly denied taking the ring. The state did not charge Morales with the theft until July 26. We conclude that on June 3, police had probable cause to arrest Morales

for the crime. *See State v. Olson*, 436 N.W.2d 92, 94 (Minn.1989), *aff'd*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (probable cause means police "reasonably could have believed that a crime had been committed by the person to be arrested").

■ The state claims that the police investigation continued after June 3. The only additional facts the police uncovered, however, were another witness's corroboration of the theft and Kielmeyer's statement that she did not authorize Morales to take the ring. The earlier evidence alone was sufficient to find probable cause. *See id.* Additionally, we resolve any ambiguity about when the police completed its investigation in Morales' favor. *See Folley*, 438 N.W.2d at 374–75.

A recently issued opinion from this court determines how to calculate jail credit when the defendant is in jail on another offense when the complaint is filed in the current offense. *See Fritzke*, 521 N.W.2d at 861. In *Fritzke*, the defendant was arrested on the first offense. The defendant was then arrested, tried and sentenced on a second offense, all before a complaint was filed on the first offense. This court held that the jail credit calculation should begin with the defendant's arrest on the first offense:

> [A] defendant is entitled to credit for all time spent in custody * * * on other charges, beginning on the date the prosecution acquires probable cause to charge the defendant with the offense for which he or she was arrested.

*Id.* at 862.

■ The facts of this case are slightly different from *Fritzke* because Morales was already in custody for the first offense during the time he would have been arrested on the theft charge. Thus, the date of the arrest is not necessarily the date to begin the jail credit calculation. The date police acquire probable cause to charge the defendant on a new offense, not the date they arrest him or actually file the complaint, is the date to begin calculating jail credit. *Id.* Here, that date was June 3 and Morales should receive jail credit as of that date. Because there is some uncertainty in the record regarding when Morales was released from jail, we remand the case to the trial court for a proper calculation of jail credit. *See id.*

## DECISION

Morales is entitled to jail credit on the felony theft conviction for the time he spent in custody from June 3, 1994, the date that police acquired probable cause to arrest him, until he was released from custody on the unrelated offense.

**Reversed and remanded.**