*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0068**

State of Minnesota,
Respondent,

vs.

Michael John Mahle,
Appellant.

**Filed January 12, 2015
Affirmed in part and remanded
Schellhas, Judge**

Anoka County District Court
File No. 02-CR-12-5912

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Lisa B. Jones, Brianne Jo Buccicone, Assistant County Attorneys, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Sharon E. Jacks, Assistant Public Defenders, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Johnson, Judge; and

Stoneburner, Judge.[*]

---

[*]  Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant argues that the district court erred by imposing a gross misdemeanor sentence consecutive to a felony sentence and by not announcing jail credit at the time of sentencing. We affirm in part and remand.

## FACTS

On August 10, 2012, respondent State of Minnesota filed a criminal complaint against appellant Michael Mahle, who was then in custody in Anoka County, alleging one count of felony stalking (second or subsequent violations) and one count of felony stalking (pattern of conduct). On August 12 or 13, 2012, Mahle was released on bond. On July 30, 2013, while serving an unrelated prison sentence for fourth-degree assault (peace officer), Mahle filed a detainer regarding the Anoka County charges and subsequently reached an agreement with the state to resolve the charges.[1] The parties agreed to the following terms: Mahle would plead guilty to an amended count of gross-misdemeanor stalking; the remaining felony count would be dismissed; and the district court would sentence Mahle consecutively to the felony sentence he already was serving and would order two years of probation.

---

[1] Mahle was serving a 17-month prison sentence imposed on July 15, 2013, in Ramsey County District Court, as a result of Mahle's guilty plea to fourth-degree assault of a peace officer on March 13, 2013. Mahle's supervised release date was June 9, 2014, and the expiration date of his sentence was November 28, 2014. At the time of sentencing for the fourth-degree assault conviction, the district court granted Mahle 16 days of jail credit.

On September 16, 2013, Mahle pleaded guilty to an amended charge of gross-misdemeanor stalking, and on October 15, the district court imposed a stayed, one-year sentence, plus "probation for a period of two years." The court stated that "[b]oth the sentence and the probation are to run consecutive to the time that . . . Mahle is currently serving" and that the sentence and probation would commence on November 29, 2014, the day following the expiration of Mahle's felony sentence. Noting that it was staying "all of [Mahle's] sentence," the court declined to announce Mahle's jail credit and stated that it would address jail credit if Mahle's sentence was executed.

This appeal follows.

**D E C I S I O N**

*Consecutive sentencing*

Mahle argues that the district court erred by imposing his gross-misdemeanor stalking sentence consecutive to his felony assault sentence. He argues that if he had been convicted of felony stalking, rather than gross-misdemeanor stalking, "his sentence would have been concurrent with the sentence he was already serving for assault."

This court has "express statutory authority to 'review [a] sentence . . . to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court.'" *State v. Soto*, 855 N.W.2d 303, 312 (Minn. 2014) (quoting Minn. Stat. § 244.11, subd. 2(b) (2012)). "When reviewing a sentence imposed or stayed by a district court, [appellate courts] do so under an abuse of discretion standard." *State v. Franklin*, 604 N.W.2d 79, 82 (Minn. 2000). A district court abuses its discretion by

3

imposing a sentence that "is disproportionate to the offense or unfairly exaggerates the criminality of the defendant's conduct." *State v. McLaughlin*, 725 N.W.2d 703, 715 (Minn. 2007) (quotations omitted). When a sentencing challenge is based on a legal issue, an appellate court's review is de novo. *State v. DeRosier*, 719 N.W.2d 900, 903 (Minn. 2006).

"The Minnesota Sentencing Guidelines state at the outset that they apply only to felonies." *State v. Campbell*, 814 N.W.2d 1, 5 (Minn. 2012). "[G]ross misdemeanor sentences are indeterminate with limits set by statute." *Id.* at 6 (citing Minn. Stat. § 609.02, subds. 3–4 (2010)). "A district court sentencing . . . gross misdemeanor offenses may impose a sentence anywhere within the statutory range." *Id.* Additionally,

> [w]hen a court imposes sentence for a misdemeanor or gross misdemeanor offense and specifies that the sentence shall run consecutively to any other sentence, the court may order the defendant to serve time in custody for the consecutive sentence in addition to any time in custody the defendant may be serving for any other offense.

Minn. Stat. § 609.15, subd. 1(b) (2012).

Mahle argues that "a long line of cases from Minnesota's appellate courts have indicated that a defendant cannot receive a consecutive non-felony sentence when he could not have received a consecutive felony sentence, as this exaggerates the criminality of the offense." Mahle cites *State v. Dulski*, a jail-credit case in which the supreme court stated:

> We believe that it would be unfair to hold, in effect, that a defendant who is convicted of a gross misdemeanor may, by virtue of the technical nonapplicability of the Sentencing Guidelines, have *to serve more total time in confinement* in a

4

case such as this than he would have to serve if he were convicted of a felony.

363 N.W.2d 307, 310 (Minn. 1985) (emphasis added); *see also Dockin v. State*, 399 N.W.2d 104, 106–07 (Minn. App. 1987) (determining that when defendant was "subject to and under" felony sentence at the time she was sentenced for multiple misdemeanor offenses that could have been aggregated into fewer felony offenses, resulting in no additional time served, consecutive sentencing for misdemeanor offenses unfairly exaggerated the criminality of defendant's conduct and was unfair).

Mahle also cites *State v. Perkins*, in which the supreme court cited *Dulski* and reversed a 30-month total sentence, which consisted of concurrent 13- and 18-month felony sentences plus a consecutive 12-month gross-misdemeanor sentence. 554 N.W.2d 80, 80 (Minn. 1996). The supreme court noted that had the defendant been sentenced for three felonies, his sentence would have been 21 months, and concluded that "it [wa]s unfair to require [the defendant] to spend more time in custody than he would have to spend in custody if he had been convicted of a felony rather than a gross misdemeanor." *Id.* But in *Perkins*, the defendant apparently pleaded guilty to two felonies and one gross misdemeanor simultaneously without agreeing to consecutive sentencing. The circumstances surrounding Perkins's sentences are distinguishable from those surrounding Mahle's sentences.

Mahle also cites *State v. Weber*, another jail-credit case in which the supreme court recognized that a defendant whose second offense is less serious than his first offense, e.g., a gross misdemeanor following a felony, "will often serve more total time

5

than the defendant whose second offense is more serious." 470 N.W.2d 112, 115 (Minn. 1991). The supreme court stated in dicta, "Imposition of a shorter sentence for the second offense, then, may result, illogically it seems to us, in the defendant serving more total time than he would have served had his second offense been more serious and the sentence for that offense longer." *Id.* at 115–16. But the supreme court did not hold that a district court is not permitted to impose a gross-misdemeanor sentence consecutive to a felony sentence.

Despite Mahle's lack of authority to support his consecutive-sentencing argument, we address whether the district court's imposition of a consecutive gross-misdemeanor sentence to Mahle's previously imposed felony sentence unfairly exaggerates the criminality of his offense of stalking J.E.K. We do so by asking whether Mahle would have been subject to less incarceration if he had been sentenced for felony stalking instead of gross-misdemeanor stalking. Based on our analysis below, we conclude that, if Mahle had been sentenced for felony stalking, he would have been subject to a longer period of incarceration.

A district court may order permissive consecutive sentences when "the presumptive disposition for the current offense(s) is commitment," the "prior felony sentence . . . has not expired or been discharged," and both felony convictions are for crimes listed in Minn. Sent. Guidelines 6 (2012). Minn. Sent. Guidelines 2.F.2.a.(1) (2012). Stalking (second or subsequent violations), stalking (pattern of conduct), and fourth-degree assault are listed in Minn. Sent. Guidelines 6. Mahle argues that both counts of felony stalking "call for a presumptive stayed sentence under the Guidelines

6

when using a criminal history score . . . of zero." Mahle's argument is based on the incorrect premise that we apply a criminal-history score of zero to determine the presumptive disposition of his sentence. "[A] criminal history score should be reduced only for purposes of determining the presumptive *duration* of the consecutive sentence." *State v. Holmes*, 719 N.W.2d 904, 908 n.8 (Minn. 2006). Mahle's criminal-history score should be used to determine the presumptive *disposition* of the sentence. *See State v. Rannow*, 703 N.W.2d 575, 578–79 & n.3 (Minn. App. 2005) (applying defendant's criminal-history score to determine presumptive disposition of sentences and whether consecutive sentencing was permissive).

Based on a footnote in Mahle's reply brief, we assume that Mahle's criminal-history score was five at the time he committed the stalking offense. Felony stalking in violation of Minn. Stat. § 609.749, subdivision 4(a) (2012) (second or subsequent violations) is a severity-level-four offense. Minn. Sent. Guidelines 5.B (2012). With a criminal-history score of five and a severity level of four, the presumptive disposition for Mahle's hypothetical felony stalking sentence is commitment. *See* Minn. Sent. Guidelines 4.A (2012). Accordingly, Mahle's sentence, had he pleaded guilty to felony stalking, would have been permissively consecutive. *See* Minn. Sent. Guidelines 2.F.2.a.(1). If Mahle had been sentenced for felony stalking consecutive to his felony assault sentence, the sentencing court would have been required to use a criminal-history score of zero, resulting in a presumptive sentence of 12 months and 1 day executed. *See* Minn. Sent. Guidelines 2.F.2.a (2012) ("For each felony offense sentenced consecutively to another felony offense(s), the court must use a Criminal History Score of 0 . . . ."),

4.A; *see also State v. Watkins*, 650 N.W.2d 738, 742 (Minn. App. 2002) ("[T]he presumptive disposition for a permissive consecutive sentence is *always* an executed sentence."). Adding a 12-month-and-1-day felony stalking sentence to Mahle's 17-month felony assault sentence would result in a total sentence of 29 months and 1 day. Mahle's sentence therefore would have been one day longer had he been sentenced for felony stalking instead of gross-misdemeanor stalking.

And had the district court chosen to sentence Mahle concurrently for felony stalking, using a criminal-history score of five and a severity level of four, his presumptive guidelines sentence would have been commitment for 23 to 32 months.[2] *See* Minn. Sent. Guidelines 4.A. A concurrent sentence for felony stalking therefore could have extended beyond the combined 29 months of his current sentence. *See State v. Petersen*, 305 Minn. 478, 481, 235 N.W.2d 801, 803 (Minn. 1975) ("Under two or more concurrent sentences, the terms are served simultaneously and a prisoner is entitled to discharge at the expiration of the *longest term* specified." (emphasis added)). We conclude that the district court did not err by sentencing Mahle under the plea agreement to a term of one year for gross-misdemeanor stalking consecutive to his felony sentence.

---

[2] We note that our hypothetical consecutive and concurrent sentencing scenarios for felony stalking only assume a sentence under section 609.749, subdivision 4(a), which is a severity-level-four offense. Minn. Sent. Guidelines 5.B. But Mahle was also charged under Minn. Stat. § 609.749, subdivision 5(a) (2012) (pattern of conduct), which is a severity-level-five offense. Minn. Sent. Guidelines 5.B. If Mahle were sentenced under that subdivision, our hypotheticals would be all the more consistent with our conclusion.

*Delayed commencement of consecutive gross-misdemeanor sentence*

The district court specifically delayed the commencement of Mahle's gross-misdemeanor sentence to November 29, 2014, the day after the expiration of Mahle's felony assault sentence. Citing Minn. Sent. Guidelines cmt. 2.F.02 for the proposition that a defendant will begin to serve his second sentence at the end of the "incarceration period" of his first sentence, Mahle argues that the "district court should not be able to delay the start date of [his] gross misdemeanor sentence when it would have been unable to do so if both sentences had been felonies." He argues that this is "a[n] additional and logical extension of the *Dulski* and *Perkins* line of cases" and maintains that "[his] gross misdemeanor sentence must start running no later than the date he was released from prison [on his felony assault sentence], on June 9, 2014." We disagree.

The sentencing guidelines do not apply to gross misdemeanors. *See Campbell*, 814 N.W.2d at 5. Moreover, comments to the sentencing guidelines, to which Mahle cites, "are advisory and are not binding on the courts." *State v. Jones*, 848 N.W.2d 528, 537 (Minn. 2014). And even if the sentencing guidelines were applicable to gross-misdemeanor sentences, the guidelines provide, "When the court orders *sentences* to be 'consecutive,' the court is ordering that multiple *sentences* be served one after the other." Minn. Sent. Guidelines 1.B.3 (2012) (emphasis added). "A consecutive sentence is one which does not begin to run until the expiration of the term of the prior sentence." *Jones*, 848 N.W.2d at 537 n.5 (quotation omitted). An "'[e]xecuted sentence' means the total period of time for which an inmate is committed to the custody of the commissioner of corrections." Minn. Stat. § 244.01, subd. 9 (2012). The sentence "includes both the term

9

of imprisonment and the term of supervised release." *State ex. rel. Peterson v. Fabian*, 784 N.W.2d 843, 846 (Minn. App. 2010); *see also* Minn. Stat. § 244.101, subd. 1 (2012) (describing components of executed sentence).

We reject Mahle's assertion that his argument is supported by a "logical extension of the *Dulski* and *Perkins* line of cases." *Dulski* and *Perkins* only support the proposition that Mahle's consecutive gross-misdemeanor sentence would have been unfair if it had subjected him to a longer period of confinement than a felony sentence. *See Perkins*, 554 N.W.2d at 80; *Dulski*, 363 N.W.2d at 310. Here, the commencement date for Mahle's consecutive gross-misdemeanor sentence did not subject Mahle to a longer period of confinement than he could have served had the court sentenced him for felony stalking. We conclude that the district court did not abuse its discretion by imposing Mahle's gross-misdemeanor stalking sentence consecutive to his felony assault sentence and ordering that it commence at the expiration of his felony sentence.

### Jail credit

In connection with his jail credit, Mahle asked the district court during his sentencing hearing, "What if I want to execute that sentence . . . ? I mean, I don't know what I'm executing." The district court declined to announce Mahle's jail credit, stating that it would address jail credit if Mahle's sentence was executed. Mahle seeks a remand to the district court with an order that the court announce his jail credit so that he can make a decision about whether to execute his stayed gross-misdemeanor sentence.

"The [district] court does not have discretion in awarding jail credit." *State v. Clarkin*, 817 N.W.2d 678, 687 (Minn. 2012). "A district court's decision whether to

award credit is a mixed question of fact and law; the court must determine the circumstances of the custody the defendant seeks credit for, and then apply the rules to those circumstances." *State v. Johnson*, 744 N.W.2d 376, 379 (Minn. 2008). "We review the factual findings underlying jail-credit determinations for clear error, but we review questions of law de novo." *Clarkin*, 817 N.W.2d at 687. "The interpretation of a procedural rule is subject to de novo review." *Johnson v. State*, 801 N.W.2d 173, 176 (Minn. 2011).

"[A] defendant is entitled to a credit from his term of imprisonment for the number of days spent in custody in connection with the offense or behavioral incident being sentenced." *Townsend v. State*, 834 N.W.2d 736, 740 (Minn. 2013) (quotation omitted). Furthermore,

> [w]hen pronouncing sentence the court must . . . [s]tate the number of days spent in custody in connection with the offense or behavioral incident being sentenced. That credit must be deducted from the sentence and term of imprisonment and must include time spent in custody from a prior stay of imposition or execution of sentence.

Minn. R. Crim. P. 27.03, subd. 4. "'Must' is mandatory." *Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 721 (Minn. 2008) (quotation omitted); *see also* Minn. Stat. § 645.44, subd. 15a (2014). The district court therefore was required to announce Mahle's jail credit and deduct that time from his sentence and erred by declining to do so.

Citing Minn. Stat. § 609.145, subd. 3, the state argues that the district court was not required to announce jail credit because the court did not commit Mahle to the

commissioner and that "[d]istrict courts only need to announce jail credit when they are imposing a term of imprisonment." Minnesota Statutes section 609.145, subdivision 3 (2012), provides:

> When a person is to be committed to the commissioner, the person's probation officer must provide to the court, prior to the sentencing hearing, the amount of time the person has in credit for prior imprisonment. The court must pronounce credit for prior imprisonment at the time of sentencing.

Although the mandate of section 609.145, subdivision 3, may be limited, the state's argument is unpersuasive. The mandate of rule 27.03, subdivision 4, is clear and broad. The rule requires that the court announce jail credit "[w]hen pronouncing sentence" in all cases. *See* Minn. R. Crim. P. 27.03, subd. 4.

We agree that Mahle has the right to know the jail credit that he will be given to enable him to decide whether to execute his sentence. The state makes arguments, as does Mahle, regarding the amount of jail credit to which Mahle may be entitled. We decline to address those arguments, leaving the matter to be determined by the district court.

**Affirmed in part and remanded.**