**STATE of Minnesota, Respondent,**

v.

**Joshua Lawrence JOHNSON, Appellant.**

No. A06–131.

Supreme Court of Minnesota.

Feb. 14, 2008.

## OPINION

MEYER, Justice.

We are called upon to determine whether a criminal defendant is entitled to custody credit for time spent in a secure treatment facility when the placement in that facility is based upon a prior civil commitment and is unrelated to the criminal charges for which he was sentenced.

Appellant Joshua Lawrence Johnson pleaded guilty to making terroristic threats while at a secure treatment facility under a civil commitment order. At his sentencing hearing, Johnson was denied custody credit for time spent in a secure treatment facility. The court of appeals affirmed on the grounds that the conditions of Johnson's civil commitment had not been altered. We affirm.

Johnson was under civil commitment as a sexual offender in the Minnesota Security Hospital in St. Peter (St. Peter) on November 29, 2004, when he was arrested for making terroristic threats against various staff members. Four months later, he was charged with seven counts of terroristic threats and one count of assault, and apparently was then transferred to the Moose Lake Treatment Center, Minnesota Sex Offender Program (Moose Lake).[1] Nothing in the record indicates this transfer was in any way related to the pending criminal charges.[2] On September 7, 2005, he pleaded guilty to one count of terroristic threats, and on October 18, 2005, the district court sentenced Johnson to the maximum sentence of 60 months, an upward durational departure. Johnson received a 5-year stay of execution and was required to serve 60 days in the county jail.

Johnson argued for custody credit for the time spent in Moose Lake alleging that the time spent there was the functional equivalent of incarceration. The district court denied Johnson's request for custody credit for the time spent in Moose Lake because his civil commitment and the confinement in Moose Lake were unrelated to the crime for which he was being sentenced.

1. Johnson indicates in his brief that he was transferred to Moose Lake on the day of the offense. Although the record is not entirely clear as to when the transfer occurred, the April 11, 2005, complaint was served by mail on Johnson at St. Peter, suggesting that he was not transferred to Moose Lake before the complaint was served. A May 3, 2005, order requiring the Nicollet County Sheriff to transport him from Moose Lake to the Nicollet County Government Center for his first appearance on the complaint demonstrates that he was at Moose Lake by that date.

2. Johnson claims in his brief that "[i]f not for the criminal offense, [Johnson] would have remained in the St. Peter facility in his treatment program." The record offers no support for this assertion.

Johnson appealed, arguing that (1) the upward durational departure was an abuse of discretion; (2) he did not waive his right to a sentencing jury on the aggravating factors used to justify the upward departure; and (3) the denial of custody credit was error. *State v. Johnson,* 2007 WL 152104, at *1 (Minn.App. Jan.23, 2007). The court of appeals vacated the sentence and remanded for a jury trial on the upward departure, but affirmed the denial of custody credit. *Id.* We granted review on the custody credit issue.

■■■ The defendant bears the burden of establishing entitlement to credit for time spent in custody during criminal proceedings. *State v. Garcia,* 683 N.W.2d 294, 297 (Minn.2004). The decision to award custody credit is not discretionary with the district court. Minn. R.Crim. P. 27.03, subd. 4(B). A district court's decision whether to award credit is a mixed question of fact and law; the court must determine the circumstances of the custody the defendant seeks credit for, and then apply the rules to those circumstances. Interpretation of the rules of criminal procedure is a question of law, which we review de novo. *Ford v. State,* 690 N.W.2d 706, 712 (Minn.2005). We will not reverse a district court's factual findings unless they are clearly erroneous or contrary to law. *State v. Anderson,* 733 N.W.2d 128, 136 (Minn.2007).

The rules of criminal procedure provide that a criminal defendant at sentencing shall get credit for time spent in jail in connection with the criminal charges. Minn. R.Crim. P. 27.03, subd. 4(B).

■■■ The policy behind giving custody credit is to ensure fairness and proportionality in sentencing. In our decisions about custody credit, we seek to avoid four potential concerns: de facto conversion of a concurrent sentence into a consecutive sentence; indigent persons serving effectively longer sentences as a result of their inability to post bail; irrelevant factors (e.g., whether the defendant pleads guilty) affecting the length of incarceration; and manipulation of charging dates by the prosecutor so as to increase the length of incarceration. *State v. Jackson,* 557 N.W.2d 552, 553 (Minn.1996); *State v. Weber,* 470 N.W.2d 112, 114 (Minn.1991) (quoting *State v. Folley,* 438 N.W.2d 372, 374–75 (Minn.1989)); *State v. Goar,* 453 N.W.2d 28, 29–30 (Minn.1990) (also quoting *Folley* ); *State v. Dulski,* 363 N.W.2d 307, 309–10 (Minn.1985).

We have held that when time is spent in a noncorrectional facility such as a residential treatment center with restrictions equivalent to those of a correctional facility, fairness and equity require the award of custody credit for time spent in such a facility. *Asfaha v. State,* 665 N.W.2d 523, 528 (Minn.2003). We have also held that a prison inmate, who was sentenced to a concurrent sentence for making terroristic threats in a letter written from prison, is entitled to receive custody credit for time spent in prison between the issuance of the terroristic threats complaint and the date of sentencing. *State v. Arden,* 424 N.W.2d 293, 294–95 (Minn.1988).

■■■ Johnson argues that under *Asfaha* his confinement in connection with the terroristic threat charges was spent at the functional equivalent of a prison and that under *Arden* he is entitled to receive custody credit for time spent at the Moose Lake facility. Johnson asserts that the criminal sentence is a de facto consecutive sentence because it disrupts his treatment, requiring him to begin anew. He points out that some patients in secure treatment facilities are subject to administrative restrictions when criminal charges are pending.

■ The State argues that because Johnson was civilly committed for an indeterminate time to a secure treatment facility prior to the complaint and sentencing, the term of his confinement at Moose Lake was unaffected by the criminal charges, and thus the time spent at Moose Lake is ineligible for credit. The State further contends that granting Johnson credit would violate the policy of proportionality by incarcerating him for less time than someone similarly charged but not civilly committed.

We conclude that the State has the better argument. There is no evidence in the record that the terms of Johnson's confinement under civil commitment have been altered because of the criminal charges. Even if the record established (and this record does not) that Johnson's sentence to confinement in a correctional facility delayed his sex offender treatment program at St. Peter, his civil commitment is indefinite. The sentence without custody credit does not prolong Johnson's confinement and therefore does not serve as a de facto consecutive sentence.

Like the defendant in *Asfaha*, Johnson was held in a facility that is without dispute the functional equivalent of a jail. Like the defendant in *Arden*, who was charged while in prison for a prior offense, Johnson was charged while already committed to a secure treatment facility. Johnson's case is different, however, because of the reasons for which he was in Moose Lake and St. Peter. Johnson was not sentenced to serve time at either facility, nor was he there as a condition of probation. He was in a secure treatment facility for purposes of treatment. Mindful of that purpose, we decline to conflate treatment and punishment. In contrast, the defendant in *Asfaha* was in a facility as a condition of probation, 665 N.W.2d at 524, and the defendant in *Arden* was in prison on a determinant sentence for attempted second-degree murder, 424 N.W.2d at 293. Johnson's situation is also distinguishable from the one in *State v. Bonafide*, where the defendant was civilly committed under Rule 20 proceedings *after* being charged. *See* 457 N.W.2d 211, 212 (Minn.App.1990).

Here, there is no imposition of a de facto consecutive sentence because only one sentence is at issue. Johnson was not kept in jail longer because of inability to post bail; he could only be released to his previous living situation in the secure treatment facility. If he had pleaded guilty earlier, he might have served the 60 days earlier, but he would still have been returned to a secure treatment facility, because he was civilly committed. We are not concerned about prosecutorial manipulation of charging dates to increase the length of incarceration, because there is only one sentence at issue and the prosecutor had no control over the duration of Johnson's civil commitment.

■ Although Johnson emphasizes his transfer from St. Peter to Moose Lake subsequent to the offense to support his argument that the confinement in Moose Lake was in connection with the charges, he recognizes that St. Peter and Moose Lake are essentially the same kind of facility. Other than the prosecutor's speculation that St. Peter staff feared Johnson and wanted to transfer him, the record does not indicate a reason for the transfer to Moose Lake. The simple fact of the transfer is insufficient to indicate custody separate from the civil commitment. Under these circumstances, we decline to award Johnson custody credit.

Affirmed.

PAGE, Justice (dissenting).

Because the record suggests that Johnson was transferred from the St. Peter

Security Hospital to the Moose Lake Treatment Center for purposes of punishment related to the charges against him, I conclude that he is entitled to custody credit. Therefore, I respectfully dissent.