*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0217**

Gale Allen Rachuy, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed September 8, 2014
Affirmed
Hooten, Judge**

St. Louis County District Court
File No. 69DU-CR-10-3321

Gale Allen Rachuy, Oakdale, Louisiana (pro se appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Kristen E. Swanson, Assistant County Attorney, Duluth, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Hooten, Judge.

**UNPUBLISHED OPINION**

**HOOTEN**, Judge

Appellant challenges the district court's calculation of custody credits, failure to address the terms of his misdemeanor sentence upon remand, and rejection of his claim

that the assistant county attorney kidnapped him from Wisconsin to stand trial in Minnesota. We affirm.

## FACTS

In 2010, appellant Gale Rachuy purchased lawn and sports equipment and gasoline from two businesses with checks from closed bank accounts. *State v. Rachuy*, A11-1491, 2012 WL 3263765, at *1 (Minn. App. Aug. 13, 2012), *review denied* (Minn. Oct. 24, 2012). Respondent State of Minnesota charged Rachuy with one count of felony theft of services, one count of felony issuance of a dishonored check, and one count of misdemeanor issuance of a dishonored check. *Id.* Rachuy appeared before the district court in December 2010, posted bond, and was released from the St. Louis County jail.

On February 8, 2011, the FBI arrested Rachuy and held him in Wisconsin. While in federal custody, Rachuy demanded a speedy trial for his Minnesota offenses. On April 11, 2011, the district court signed a detainer agreement allowing the St. Louis assistant county attorney to accept temporary custody of Rachuy from the U.S. Marshal's Office "in connection with [Rachuy's] request for disposition of detainer." Rachuy returned to the St. Louis County jail on May 2, 2011.

After the first day of trial for Rachuy's Minnesota charges, the state dismissed the count of felony theft of services. *Rachuy*, 2012 WL 3263765, at *1. The jury found Rachuy guilty of the two remaining counts. *Id.* At sentencing on May 23, 2011, the district court imposed 60 months' imprisonment. Rachuy asserted that he should receive 222 days of custody credit. The presentence investigation report states that Rachuy has 119 days of credit for time confined in various Minnesota jails, not counting time that

2

Rachuy was in federal custody. The district court added five days for a scheduling delay and granted Rachuy 124 days of credit. Following sentencing, Rachuy returned to federal custody to serve a sentence in Louisiana.

On direct appeal, we affirmed the felony conviction but reversed in part and remanded because the district court failed to address the precise terms of the misdemeanor sentence. *Rachuy*, 2012 WL 3263765, at *4. On remand, the district court vacated the misdemeanor conviction, reasoning that judicial economy would not be served by transporting Rachuy from federal custody in Louisiana to impose 90 days' imprisonment in Minnesota.

In December 2013, Rachuy moved the district court to grant additional days of custody credit for time spent in federal custody between February 8, 2011 and May 1, 2011. Rachuy also alleged that the district court "lost jurisdiction over the misdemeanor" and that the assistant county attorney "caused the unlawful kidnapping" of him from federal custody to stand trial in Minnesota.

The district court granted in part and denied in part Rachuy's motion for additional custody credit. The district court sua sponte subtracted 2 days of credit for a double-counting miscalculation. The district court granted additional credit for part of the time that Rachuy was in federal custody, adding 21 days for the period between April 11, 2011—the date the detainer agreement was signed—and May 1, 2011—the date Rachuy returned to county jail. Accordingly, the district court determined that Rachuy was entitled to 143 days of total credit. The district court dismissed Rachuy's other arguments. Rachuy appeals.

3

## D E C I S I O N

## I.

Rachuy argues that the district court erred in calculating his custody credits. The decision to grant or deny custody credit is not discretionary. *State v. Johnson*, 744 N.W.2d 376, 379 (Minn. 2008). A challenge to the district court's grant of custody credit raises a mixed question of law and fact. *Id.* "[T]he [district] court must determine the circumstances of the custody the defendant seeks credit for, and then apply the rules to those circumstances." *Id.* Interpretation of the rules of criminal procedure is a question of law reviewed de novo. *Id.* But we rely on a district court's factual findings unless they are clearly erroneous or contrary to law. *Id.*

The district court must state and deduct the number of days the defendant spent in custody "in connection with the offense." Minn. R. Crim. P. 27.03, subd. 4(B). The defendant bears the burden of establishing that he or she is entitled to custody credit. *Johnson*, 744 N.W.2d at 379.

Rachuy complains that he should be granted 227, rather than 143, days of credit. But Rachuy's argument fails for two reasons. First, his calculations are replete with mathematical errors. He incorrectly calculates that there are eight days between July 22, 2010 and July 23, 2010, and that there are 89 days between February 8, 2011 and May 2, 2011. Rachuy also double-counts the day of December 22, 2010.

Second, Rachuy fails to meet his burden of showing that custody credits should be given for the period between February 8, 2011—the date he was taken into federal custody—and April 11, 2011—the date the detainer agreement was signed to transfer him

4

to Minnesota. Rachuy argues that this period of federal custody was "in connection" with the instant offense. But the inter-jurisdictional rule requires a district court to award custody credit only for time spent in custody that is "'*solely*' in connection" with the Minnesota offense. *State v. Hadgu*, 681 N.W.2d 30, 33 (Minn. App. 2004) (emphasis added) (quotation omitted), *review denied* (Minn. Sept. 21, 2004). Rachuy provides no evidence to support his assertion that his federal custody during this time period was in any way connected to the Minnesota offense, let alone that the Minnesota offense was the sole reason for it. Moreover, the federal court of appeals' decision reveals that Rachuy was arrested, charged, convicted, and sentenced in Wisconsin for transporting stolen vehicles across state lines, an incident unrelated to the Minnesota offenses for which he was sentenced in St. Louis County. *See United States v. Rachuy*, 743 F.3d 205, 207 (7th Cir. 2014). Accordingly, the district court did not err by denying in part Rachuy's motion for additional custody credits.

## II.

Rachuy argues that the district court "lost jurisdiction" over the misdemeanor conviction because it did not sentence him on the misdemeanor conviction following our remand on direct appeal. Rachuy contends, therefore, that we "must direct that the misdemeanor be vacated in its entirety." But the district court already vacated the misdemeanor conviction upon remand in the interest of judicial economy. Rachuy appears to be challenging the district court's determination already granting the relief he now seeks from us. No further relief is warranted.

5

## III.

Finally, Rachuy argues that the district court erred by dismissing his claim that the assistant county attorney "kidnapped" him from federal custody to stand trial in Minnesota. He also contends that the district court judge "was not a good judge to have decided the matter" because "he was just as involved as" the assistant county attorney. But the record shows that Rachuy initiated and consented to his return to Minnesota. He stated before the district court:

> [The assistant county attorney] . . . will verify that I asked [the judge] in the Federal Court that I be allowed to come back to Minnesota to stand trial on this, along with everything else. . . . . I asked [the judge] to allow me to come up here and [the assistant county attorney] then asked as far as bringing me out.

Rachuy complains that the Interstate Agreement on Detainers (IAD) was violated because he was not serving a term of imprisonment when the detainer agreement was signed to transfer him to Minnesota. Under the IAD:

> Whenever a person has *entered upon a term of imprisonment* in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within 180 days* after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint . . . .

Minn. Stat. § 629.294, subd. 1, art. III(a) (2010) (emphases added).

6

But the "term of imprisonment" provision of the IAD is only significant in ensuring that a person serving a term of imprisonment in another jurisdiction is tried within 180 days upon a request for a final disposition of a Minnesota charge. Moreover, the IAD "should not be mechanically applied without an examination of the circumstances of the case in light of the purpose of the [IAD]." *State v. Lewis*, 422 N.W.2d 768, 771 (Minn. App. 1988). Indeed, "[i]t is anomalous to apply the law so literally that its application subverts its very purpose. If the circumstances show that the technical application of the [IAD] does not serve one of the protective functions, it should not be so applied." *Id.* "The purpose of [the IAD] is to provide cooperative procedures between jurisdictions to ensure prompt disposition of outstanding charges, implement prisoners' rights to a speedy trial, and prevent interference with prisoners' participation in treatment and rehabilitation programs." *State v. Fuller*, 560 N.W.2d 97, 98–99 (Minn. App. 1997), *review denied* (Minn. Apr. 24, 1997).

The IAD does not prohibit a situation, as here, in which the defendant, who is not serving a term of imprisonment, voluntarily seeks final disposition of a Minnesota charge. In such a scenario, the IAD's 180-day deadline for trial is inapplicable. And even if it is applicable, Rachuy himself requested a transfer to Minnesota, and he was transferred, tried, convicted, and sentenced all within May 2011. Accordingly, the IAD's 180-day deadline has been satisfied, and the underlying policies of the IAD were served by Rachuy's return to Minnesota. Rachuy's kidnapping claim is without merit and warrants no relief.

**Affirmed.**

7