*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0109**

State of Minnesota,
Respondent,

vs.

Arthur Senty-Haugen,
Appellant.

**Filed December 19, 2016
Affirmed
Kirk, Judge**

Carlton County District Court
File No. 09-CR-14-2335

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Thomas Pertler, Carlton County Attorney, Jesse D. Berglund, Assistant County Attorney, Carlton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Bjorkman, Judge; and Smith, Tracy M., Judge.

## UNPUBLISHED OPINION

**KIRK**, Judge

On his appeal from his bribery conviction, appellant argues that the district court erred by: (1) denying his motion to suppress evidence seized during a warrantless search

of the digital contents of his smartphone and (2) denying him credit for 22 days in jail. We affirm.

## FACTS

This case raises the issue of whether an involuntarily civilly committed person retains a legitimate expectation of privacy in the contents of a smartphone that was seized by staff members of the Minnesota Sex Offender Program (MSOP).

The parties do not dispute the facts. Appellant Arthur Senty-Haugen is indefinitely civilly committed as a sexual psychopathic personality and sexually dangerous person (SDP/SPP) at MSOP. *Senty-Haugen v. Goodno*, 462 F.3d 876, 880 (8th Cir. 2006). On August 12, 2014, an MSOP staff member was performing random room checks and discovered appellant holding a device emitting a bright light, which the staff member believed to be a smartphone. Staff searched appellant's room and found a phone charger. As staff transferred appellant to a high-security area to perform a body search, a Samsung Galaxy S5 smartphone slid out from his pant leg. Electronic communication devices, including cell phones, are considered contraband. MSOP Policy 301.030. The policy defines contraband as "items which are prohibited by Statute or Policy, or deemed a risk to the safety, security or therapeutic environment impacting the program or a [patient]." *Id.* A smartphone is only allowed for approved individuals inside the secure perimeter for business-related purposes. MSOP Policy 301.025.

Kenneth Stewart, an MSOP investigator, testified at the contested omnibus hearing about MSOP's investigation into the smuggling of the smartphone into the facility. Stewart

2

explained that MSOP did not seek a warrant to search the phone because appellant's possession of the phone merely violated MSOP's security policies and was not a crime. MSOP staff and administrators did not know, and appellant refused to disclose, how he had managed to obtain the smartphone. Stewart testified that the MSOP administrators were concerned about appellant's ability to use the phone to circumvent the facility's monitored telephone system and the potential of an ongoing security breach inside the facility.

Forensic IT specialists at the Minnesota Department of Human Services (DHS) lacked the necessary software to unlock the digital contents of the smartphone. MSOP administrators next solicited the assistance of a forensic investigator from the Santa Barbara Police Department in California. The investigator extracted the smartphone's data and copied the data onto a disk, which MSOP officials reviewed. Data from the disk included text messages indicating that appellant had paid an MSOP staff member $3,000 to smuggle the smartphone into the facility. MSOP officials questioned the staff member, and he admitted that appellant paid him $3,000 to smuggle the smartphone into MSOP.

Respondent State of Minnesota charged appellant with felony bribery. Appellant moved to suppress the evidence discovered during the warrantless search of his smartphone. Relying on *Riley v. California*, 134 S. Ct. 2473 (2014), he asserted that he retained a reasonable private interest in the digital contents of the smartphone and that no exigent circumstances existed allowing MSOP officials to search the phone without a

3

warrant. He also asserted that the search was unreasonable because existing MSOP policy only allowed staff to seize the smartphone, but not to search its contents.

After a contested omnibus hearing, the district court issued an order denying appellant's motion. It implicitly found that appellant retained a legitimate expectation of privacy in the contents of his electronic devices under *Riley* and *State v. Barajas*, a recent decision from this court. 817 N.W.2d 204 (Minn. App. 2012), *review denied* (Minn. Oct. 16, 2012). In *Riley*, the Supreme Court held that a search warrant is generally required before law enforcement may search information stored on a cell phone. 134 S. Ct. at 2493. In *Barajas*, this court held that the digital contents of cell phones are subject to Fourth Amendment protections. 817 N.W.2d at 216-17. But the district court noted that, as an involuntarily civilly committed patient, appellant retained a diminished expectation of privacy after commitment to a custodial facility similar to a pretrial detainee.

The district court applied the balancing test announced in the U.S. Supreme Court decision *Bell v. Wolfish*, which is used to determine the reasonableness of a search under the Fourth Amendment for pretrial detainees. 441 U.S. 520, 99 S. Ct. 1861 (1979). It concluded that the search of the digital contents of appellant's phone was reasonable on the grounds that a phone in the possession of an involuntarily committed SDP/SPP could be used to circumvent MSOP's monitoring policies, and it presented a grave security threat for both MSOP and the public. It cited MSOP's strict regulations concerning the use of mobile devices by MSOP staff and administrators. *See, e.g.*, MSOP Policy 301.030 (prohibiting patients from possessing contraband including cell phones within and on the

4

grounds of all MSOP facilities). It also cited MSOP Policy 301.010, which authorizes MSOP to search personal effects for contraband by visual, canine, or electronic means.

On September 15, 2015, appellant stipulated to the state's case to obtain appellate review of the district court's denial of appellant's suppression motion. *See* Minn. R. Crim. P. 26.01, subd. 4. The district court accepted appellant's plea and sentenced him to a bottom-of-the-box sentence of 26 months, with credit for 383 days.

This appeal follows.

## D E C I S I O N

**I.  The district court did not err in denying appellant's motion to suppress evidence seized from a warrantless search of the digital contents of his smartphone.**

When reviewing a pretrial order on a motion to suppress evidence, we review the district court's factual findings for clear error, giving due weight to the inferences the district court draws from those facts, but we determine as a matter of law whether the district court erred in suppressing or not suppressing the evidence. *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011).

Both the United States Constitution and the Minnesota Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. In determining whether an individual's Fourth Amendment rights are implicated, "(1) the search must be of an area in which the person has an expectation of privacy and (2) the person's expectation of privacy must be one that is recognized within society as reasonable." *Barajas*, 817 N.W.2d at 213. Whether appellant can invoke the protections

5

of the Fourth Amendment requires this court to first determine whether appellant exhibited an actual subjective expectation of privacy in the smartphone, and second, whether that expectation is reasonable. *In re Welfare of B.R.K.*, 658 N.W.2d 565, 571 (Minn. 2003) (citing *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507 (1967)).

Both parties agree that appellant had a subjective expectation of privacy in the digital contents of his smartphone. The issue before the court is the reasonableness of appellant's expectation of privacy. "If there is no legitimate expectation of privacy, then there can be no Fourth Amendment violation." *United States v. Bach*, 310 F.3d 1063, 1066 (8th Cir. 2002). As an involuntary civilly committed patient, appellant has the same Fourth Amendment protections as a pretrial detainee. *Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009). Pretrial detainees retain a diminished expectation of privacy after commitment to a custodial facility. *Bell*, 441 U.S. at 522, 99 S. Ct. at 1865.

Appellant argues that under *Riley*, he retains a reasonable, but diminished, expectation of privacy in the digital contents of his smartphone and that no MSOP policy authorized the warrantless search of the phone. The state argues that *Riley* does not apply because its holding is limited to warrantless searches by law enforcement of an arrestee's phone under the search-incident-to-arrest exception.

The parties' arguments reflect a lack of certainty about the extent of privacy protections afforded to the electronic media devices of pretrial detainees under *Riley*. Any constitutional guarantee, however, only protects against unreasonable intrusions or searches that "are not justified in the circumstances, or which are made in an improper

6

manner." *Schmerber v. California*, 384 U.S. 757, 768, 86 S. Ct. 1826, 1834 (1966). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell*, 441 U.S. at 559, 99 S. Ct. at 1884. A district court must balance "the need for the particular search against the invasion of personal rights that the search entails" by considering "the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted." *Id.*

In *Bell*, the Supreme Court upheld the practice of prison authorities conducting visual body-cavity searches of pretrial detainees in a federally operated short-term custodial facility following contact visits. The Court assumed that the inmates had an expectation of privacy, but it justified the reasonableness of this highly invasive search technique on the grounds that a detention facility was a place "fraught with unique security dangers" and prison officials had testified that the search technique was necessary to discover and deter the smuggling of weapons, drugs, and other contraband into the detention facility. *Id.* at 558, 99 S. Ct. at 1884. The Court noted that the search technique was a proven, effective deterrent against contraband entering the facility. *Id.* at 559, 99 S. Ct. at 1885.

Following *Bell*, we discern no error in the district court's finding of MSOP's concern that cell phones present a "grave security threat" in the context of sexually violent persons. *See Serna*, 567 F.3d at 953. The district court noted that this security threat includes the potential to conduct criminal activity by contacting past victims, grooming

7

future victims, and securing child pornography. *Id.* The photographic capabilities of smartphones can undermine institutional security by transmitting images of personnel or buildings to persons outside of the facility. *Id.* We note that the phone's ability to connect to the internet and its data-storage capabilities increase the gravity of these threats. These specific threats also undermine MSOP's treatment goals. *Id.* Further, an individual's privacy interests are lessened when the seized smartphone is contraband. *See Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 838 (2005) (holding that governmental conduct that *only* reveals the possession of contraband does not implicate the Fourth Amendment).

We conclude that the scope, manner, and justification of the search of the phone is consistent with MSOP's policies. Under *Bell*, appellant's expectation of privacy in the contents of his smartphone must be balanced against the state's compelling interest in "both protecting the public from sexual violence and rehabilitating the mentally ill." *In re Linehan*, 594 N.W.2d 867, 872 (Minn. 1999). Here, administrators at MSOP had specific evidence that appellant, an SDP/SPP, possessed a smartphone, which constituted a security breach. In light of the state's compelling interest in appellant's security and rehabilitation, it was reasonable for MSOP to search the digital contents of the phone to determine if a security breach had occurred or whether appellant was engaging in behavior that contravened his rehabilitation.

In *Bell*, the Supreme Court refused to adopt a less-invasive-means test for identifying contraband. 441 U.S. at 559 n.40, 99 S. Ct. at 1885 n.40. Post *Bell*, the *Serna*

8

Court noted that to do otherwise would "effectively deprive institutional administrators of the deference noted in *Bell*." 567 F.3d at 955. Here, MSOP officials had to unlock the digital contents of the phone because there was no other way to determine the origination of the phone or if there were ongoing threats to the safety of the facility or appellant's rehabilitation.

Appellant argues that MSOP policies only authorized staff to seize the phone and hold it according to its evidence handling policy, which it failed to admit into the record. *See* MSOP Policy 103.030 (stating that "contraband secured during any search will be handled according to MSOP Security Policy 107.055, 'Evidence Handling'"). He also asserts that any threat posed by the phone ceased upon its seizure by MSOP.

We find appellant's argument to be unpersuasive. The *Bell* Court deferred to the judgment of detention-center officials in handling security threats within the facility. "The problems that arise in the day-to-day operation of a corrections facility are not susceptible [to] easy solutions," and "in the absence of substantial evidence in the record to indicate that officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." 441 U.S. at 547, 99 S. Ct. at 1879. Here, the district court did not err in finding that MSOP had numerous policies regulating contraband and the use of mobile devices in the facility. It was not unreasonable for MSOP administrators to search appellant's contraband phone to determine whether there were ongoing threats to the facility's security or appellant's rehabilitation.

We conclude that MSOP officials acted reasonably in sending the smartphone to forensic investigators after ascertaining that DHS lacked the appropriate software to unlock the phone's contents.

## II.     The district court did not err by denying appellant 22 days of jail credit.

A criminal defendant bears the burden of establishing entitlement to credit for time spent in custody during criminal proceedings. *State v. Garcia*, 683 N.W.2d 294, 297 (Minn. 2004). When pronouncing an individual's sentence, the district court must "[s]tate the number of days spent in custody in connection with the offense or behavioral incident being sentenced." Minn. R. Crim. P. 27.03, subd. 4(B). "[A] criminal defendant at sentencing shall get credit for time spent in jail in connection with the criminal charges." *State v. Johnson*, 744 N.W.2d 376, 379 (Minn. 2008) (citation omitted). Jail credit is applied by subtracting the credit from the specified minimum term of imprisonment of the imposed sentence. Minn. Sent. Guidelines 3.C.2.a (2014).

A district court's decision whether to award credit is a mixed question of fact and law. *Johnson*, 744 N.W.2d at 379. The court must determine the circumstances of the custody the defendant seeks credit for, and then apply the rules to those circumstances. *Id.* The sentencing court does not have discretion in awarding jail credit. *State v. Clarkin*, 817 N.W.2d 678, 689 (Minn. 2012).

Appellant argues that he is entitled to 22 days of jail credit from September 12, 2014 through October 3, 2014 because the state had probable cause that he had committed felony bribery on September 12, but delayed charging until October 3. The state disputes

10

appellant's characterization of the record, arguing that appellant should only get custody credit beginning on December 12. In support of its argument, the state submitted a copy of a booking printout from the Moose Lake Police Department reflecting that appellant was not in jail from September 12 through October 3. But this document was not filed with the district court. On appeal, this court cannot consider this document in its determination. *See* Minn. R. Civ. App. P. 110.01 (stating that the record on appeal consists of documents filed in the district court, the exhibits, and the transcripts).

At the sentencing hearing, the prosecutor conceded that appellant was entitled to jail credit beginning on October 3. He stated on the record, "I'll go with the October 3rd date for credit." The prosecutor further explained that he did not decide to charge appellant until October 3 because, on that day, he spoke with MSOP officials concerning the bribery statute, and he became convinced that he could bring charges. He also stated that the complaint was not completed until December 12 because upon further review, he found some holes in the case and requested further information from MSOP. The presentence investigation (PSI) worksheet shows that appellant was jailed for the offense from December 14, 2014 through October 21, 2015.

The district court gave appellant credit back to October 3, 2014. *Clarkin* outlines when a district court can award a defendant jail credit. 817 N.W.2d at 687.

> We conclude that an award of jail credit is appropriate for time spent in custody after the date when (1) the State has completed its investigation in a manner that does not suggest manipulation by the State, and (2) the State has probable cause and sufficient evidence to prosecute its case against the defendant with a

11

> reasonable likelihood of actually convicting the defendant of the offense for which he is charged.

*Id.* at 689.

We discern no error in the district court's calculation of appellant's jail credit. With respect to the first prong of the *Clarkin* test, the record supports the district court's implicit finding that the state completed its investigation on October 3. The prosecutor affirmed that he had substantially completed his investigation on October 3 and that he was willing to give appellant jail credit beginning on that date. Under the second prong of the *Clarkin* test, the record supports the district court's implicit finding that the prosecutor had probable cause to charge on October 3 as he had "probable cause and sufficient evidence" to successfully prosecute the charge against appellant. *Id.*

**Affirmed.**