**STATE of Minnesota, Respondent,**

v.

**José Carlos LOPEZ, Appellant.**

**State of Minnesota, Respondent,**

v.

**Gabriel Lopez, Appellant.**

**Nos. A08–100, A08–133.**

Supreme Court of Minnesota.

Feb. 11, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Charles Rasmussen, Todd County Attorney, Long Prairie, MN, for respondent.

Joel O'Malley, Special Assistant State Public Defender, Minneapolis, MN, for appellant José Carlos Lopez.

Davi E. Axelson, Assistant State Public Defender, St. Paul, MN, for appellant Gabriel Lopez.

## OPINION

MAGNUSON, Chief Justice.

Gabriel Lopez and José Carlos Lopez[1] are brothers who sold methamphetamine to a confidential informant in April 2006. Later that month, the brothers allegedly held the confidential informant and another individual hostage in the Lopez family garage for about 40 minutes until the informant arranged to pay $300 that he owed on the earlier drug transaction. Both Lopez brothers were charged with aiding and abetting a first-degree controlled-substance crime, in violation of Minn.Stat. § 152.021 subd. 1(1) (2008), and two counts of aiding and abetting kidnapping, in violation of Minn.Stat. § 609.25.,

---

1. The witnesses in this case referred to José Carlos Lopez as Carlos. When distinguishing between defendants by using first names, we will refer to them as "Carlos" and "Gabriel."

subd. 1(2) (2008). Each was convicted of the drug offense after trials based on stipulated facts, but the kidnapping charges against them were dismissed.

The district court held that Minn.Stat. § 243.166 (2008) requires both defendants to register as predatory offenders based on the kidnapping charges because those charges "arose out of the same set of circumstances" as the drug offenses. The court of appeals affirmed as to both defendants, in separate decisions. We granted the Lopezes' petitions for review and consolidated the cases to address whether the registration requirement applies. We reverse.

On April 3, 2006, a confidential informant purchased methamphetamine from Carlos for $350. Carlos's brother Gabriel arranged the sale and was present when it was completed. The informant called Gabriel on April 6, 2006, to request more drugs, and Gabriel again scheduled a meeting for the informant to purchase drugs from Carlos. Gabriel drove Carlos to the arranged meeting, where Carlos sold a quantity of methamphetamine to the informant for $900. The informant paid $600, and agreed to pay the remaining $300 at a later date.[2]

On April 16, 2006, the informant phoned the officer for whom he was working. The informant stated that he and a juvenile friend (J.S.) were "being held hostage" by the Lopezes in a garage until the $300 debt was paid. In response to the call, the officer told the informant he would hide $300 at a nearby softball field. Both Lopez brothers, the informant, and the informant's friend drove to the field together in the informant's car to collect the money. The informant retrieved the $300 and gave it to Carlos. He then dropped the Lo-pezes back at their home and departed with his friend.

According to the informant's statement to the police after the incident, the informant and his friend J.S. were together at a gas station when the Lopez brothers arrived. Carlos got into the informant's car and told him that he was "holding [the informant] hostage until [he received] his money." The informant stated that Carlos threatened to punch him, forced him to drive to the Lopez home, and took possession of his cell phone. Gabriel followed the informant to the house, where the informant alleged that the Lopezes locked him and J.S. in their garage for approximately forty minutes. The informant stated that he phoned the officer "[b]ecause Carlos and Gabe h[e]ld me hostage till I gave them the money."

J.S. gave a statement to the police about one month after the incident. According to that statement, the two Lopez brothers, the informant, and J.S. all met coincidentally at the gas station. J.S. followed the Lopezes, who were in "their own car" to the Lopez house, and the informant drove himself in a third car. Upon arrival at the house, the four young men "just went into [the Lopezes'] garage." J.S. stated that the Lopezes did not lock or even close the garage door behind them, but that he did not feel free to leave the garage until the informant had paid his $300 debt to the Lopezes. When asked whether he was scared, J.S. responded, "[a] little bit," and when asked whether he felt "threatened" or like he was being "h[e]ld captive until the money was paid," he said "a little bit but not really."

In January 2007, an attorney for Gabriel Lopez also interviewed J.S., who then

---

**2.** The amended complaint states that the $600 bought 8 grams of drugs, and that 3.4 additional grams were given to the informant for $300 to be paid later. The parties later stipulated that the total amount of drugs sold to the informant was 10.0 grams.

made a statement that was largely exculpatory on the kidnapping charges. J.S. stated that the four young men essentially ran into each other at the gas station and Gabriel invited J.S. to "hang out for a little bit" at the Lopezes' parents' house. J.S. agreed, and the group proceeded to the Lopezes' home in three separate cars—the Lopezes in one car, and the informant and J.S. following in their own vehicles.

At the Lopez house, J.S. overheard the informant say to Carlos that "he would have the money soon" and the four "st[ood] around waiting for [the informant] to get the call" regarding the money. According to J.S., neither he nor the informant ever entered the garage at the Lopez house, and he was never threatened by the Lopezes. J.S. denied receiving any threats and did not believe that the informant had been threatened by either Carlos or Gabriel.

Both Lopez brothers were charged with one count of aiding and abetting a first-degree controlled-substance crime, in violation of Minn.Stat. § 152.021, subd. 1(1) (2008), and two counts of aiding and abetting kidnapping, in violation of Minn.Stat. § 609.25, subd. 1(2) (2008). Gabriel filed a motion to dismiss the kidnapping charges for lack of probable cause, and the district court denied his motion. The defendants were eventually convicted of the drug charges in separate bench trials based on stipulated facts, but the kidnapping charges against both of them were dismissed. No mention of the alleged kidnapping was made in the fact stipulations underlying the Lopezes' convictions.

In both cases, the State argued that the defendants must register as predatory offenders pursuant to Minn.Stat. § 243.166 (2008). The district court agreed, reasoning that "the kidnapping charges arose out of the same set of circumstances as the aiding and abetting controlled substance crime" and ordered the defendants to register as predatory offenders. The Lopezes appealed separately to the court of appeals, which affirmed in both cases. *State v. Lopez*, No. A08–100, 2009 WL 749007, at *3 (Minn.App. March 24, 2009); *State v. Lopez*, 764 N.W.2d 605, 610 (Minn.App. 2009). We granted the defendants' petitions for review and consolidated the cases for argument and decision.

## I.

■ We first consider Gabriel's argument that his charge for aiding and abetting kidnapping was not supported by probable cause. Although the kidnapping charges were dismissed by the State, the predatory offender statute, Minn.Stat. § 243.166, applies to persons charged with certain crimes even if they are not convicted. *See infra*, Part II. For this reason, Gabriel challenges the propriety of the charge.

■ A person may be charged with a crime only where there is probable cause to believe that the person is guilty—that is, where facts have been submitted to the district court showing a reasonable probability that the person committed the crime. Minn. R.Crim. P. 2.01; *State v. Steinbuch*, 514 N.W.2d 793, 798 (Minn.1994) (citing *State v. Florence*, 306 Minn. 442, 239 N.W.2d 892, 896 (1976)). We review factual findings underlying a probable cause determination using the clear error standard, but review the district court's application of the legal standard of probable cause to those facts de novo. *State v. Lee*, 585 N.W.2d 378, 383 (Minn.1998) (citing *State v. Wiernasz*, 584 N.W.2d 1, 3 (Minn. 1998)).

■ A motion to dismiss for lack of probable cause should be denied where "the facts appearing in the record, including reliable hearsay, would preclude the

granting of a motion for a directed verdict of acquittal if proved at trial." *Florence*, 239 N.W.2d at 903. In other words, if the facts before the district court "present a fact question for the jury's determination" on each element of the crime charged, the charge will not be dismissed for lack of probable cause. *See State v. Slaughter*, 691 N.W.2d 70, 74–75 (Minn.2005).

In order to convict Gabriel of aiding and abetting kidnapping, the State would have been required to prove that he "intentionally aid[ed], advise[d], hire[d], conspire[d] with or otherwise procure[d]," Minn.Stat. § 609.05, subd. 1 (2008), his brother Carlos in confining the two alleged victims in the garage without their consent "to facilitate commission" of a felony, *see* Minn.Stat. § 609.25, subd. 1(2). Although the aiding and abetting case against Gabriel at the charging stage was weak, we conclude that it was sufficient to preclude a directed verdict of acquittal.

The informant directly stated that both "Carlos and Gabe" held him and his friend hostage in a locked garage. The informant also responded affirmatively to the officer's questions about whether "they" took him into the garage, locked the door, and made him stay there. Although it was Carlos and not Gabriel who allegedly told the informant he was a "hostage," J.S.'s version of events alleged that Gabriel drove Carlos from the gas station to the site of the claimed kidnapping. Gabriel was present throughout the alleged incident, including the trip to the softball field to collect the money owed to Carlos. And Gabriel arranged the drug sale that led to the $300 debt that motivated the alleged kidnapping. Those facts, if believed by a jury, would support an inference that Gabriel conspired with or aided his brother in kidnapping the informant and J.S. for the purpose of collecting money from the sale of drugs. *See, e.g., State v. Pierson*, 530

N.W.2d 784, 788 (Minn.1995) (stating that aiding and abetting liability can be inferred from the "defendant's presence at the scene of the crime, defendant's close association with the principal before and after the crime," and "defendant's lack of objection or surprise under the circumstances"). We therefore conclude that although J.S. later gave an exculpatory statement and the charge of aiding and abetting kidnapping was eventually dismissed, the district court did not err in concluding that the charge was supported by probable cause.

## II.

We now turn to the question of whether the defendants in this case must register as predatory offenders. Minnesota Statutes § 243.166 mandates that a person "shall register" as a predatory offender if the person was "charged with . . . a felony violation of or attempt to violate, or aiding, abetting, or conspiracy to commit" kidnapping under section 609.25 or another predatory offense "and convicted of or adjudicated delinquent for that offense or another offense arising out of the same set of circumstances." Minn.Stat. § 243.166, subd. 1b (a)(1).

"[T]he primary purpose of [Minn.Stat. § 243.166] is to create an offender registry to assist law enforcement with investigations." *Boutin v. LaFleur*, 591 N.W.2d 711, 717 (Minn.1999). A pre–1993 version of the statute mandated registration only for those *convicted* of predatory offenses. Minn.Stat. § 243.166 (1992). But to ensure that true predatory offenders cannot plead out of the registration requirements, the legislature amended the statute to include defendants who are merely *charged* with predatory offenses. Act of May 20, 1993, ch. 326, art. 10, § 1, 1993 Minn. Laws 1974, 2090; *see* Doron Teichman, *Sex, Shame, and the Law: An Economic Per-*

spective on *Megan's Laws*, 42 Harv. J. on Legis. 355, 411 (2005) (suggesting that the amendment to Minn.Stat. § 243.166 was primarily designed to prevent defendants from using plea agreements to avoid registration).

The amendment stopped short of requiring registration in every case where a predatory offense is charged. It instead required registration by those charged with predatory offenses *and* convicted of "another offense arising out of the same set of circumstances." Minn.Stat. § 243.166 (2008). While the threshold factual showing of probable cause necessary to support a charge is low, the language requiring a conviction for another offense "arising out of the same set of circumstances" limits the number of defendants who might be forced to register. *Cf. Illinois v. Gates*, 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause.").

The defendants in this case were charged with aiding and abetting kidnapping under Minn.Stat. § 609.25. They were also convicted of aiding and abetting a controlled substance crime. Therefore, they must register as predatory offenders if the drug convictions "ar[ose] out of the same set of circumstances" as the charged predatory crime of aiding and abetting kidnapping. *See* Minn.Stat. § 243.166.

The district court twice issued orders concluding that the defendants must register as predatory offenders. In its pre-trial order of May 25, 2007, the district court concluded that the drug sale and the kidnapping charge both "stem from the sale of drugs in exchange for $300." In other words, the court held that the kidnapping charge "arose from" the circumstances of the drug sale, specifically, the $300 debt created by the April 6 transaction. And in an order dated November 9, 2007, the court again concluded that "the Kidnapping charges arose out of the same set of circumstances as the Aiding and Abetting Controlled Substance crime...." In its second order, the court referred to its earlier conclusion as a "finding that the kidnapping charges" were "related to the drug offense."

The Lopezes appealed and the court of appeals affirmed in two separate decisions. In *State v. José Carlos Lopez*, that court held that the "controlled-substance conviction arises from the same set of circumstances as [the] kidnapping charges." No. 08–100, 2009 WL 749007, at *4 (Minn.App. March 24, 2009). The court reasoned that "[t]he same conduct and motive (i.e. completion of the April 6 narcotics transaction) gave rise to [José Carlos] Lopez's kidnapping charges and controlled-substance conviction." *Id.* at *3.

A different panel of the court of appeals reached the same conclusion in Gabriel's case. The court reasoned that "the controlled substance and the kidnapping conduct occurred during the overall, intra-related transaction." *State v. Gabriel Lopez*, 764 N.W.2d 605, 610 (Minn.App.2009).

No dispute exists regarding the material facts in this case. The parties stipulated to the facts underlying the drug convictions. Although inconsistencies exist in the various accounts of the alleged kidnapping, the charging documents and the briefs consistently describe the set of allegations used by the State to support the charges of aiding and abetting kidnapping. De novo review is therefore appropriate. *See State v. Jones*, 678 N.W.2d 1, 23 (Minn.2004) ("Statutory construction is ... a matter of law that we review de novo."); *O'Malley v. Ulland*, 549 N.W.2d 889, 892 (Minn.1996) (noting that the application of a statute to undisputed facts is reviewed de novo).

We have addressed Minn.Stat. § 243.166 on only one previous occasion. In *Boutin v. LaFleur*, 591 N.W.2d 711, 713 (Minn. 1999), the defendant pushed his girlfriend into a wall, causing her serious injury, when she returned to their home at about 2:30 a.m. "A short while later" and again at about 9 a.m., he "forced her to have sexual intercourse with him." *Id.* He was charged with criminal sexual conduct in the third degree—a felony that is included on the list of predatory offenses in Minn. Stat. § 243.166—and with assault in the third degree. *Boutin*, 591 N.W.2d at 713. After pleading guilty to third-degree assault and receiving an upward sentencing departure because of the sexual assault that immediately followed the victim's injury, Boutin argued that he should not be required to register as a predatory offender because his conviction offense was not among the predatory offenses listed in the statute. *Id.* at 713–15.

We rejected Boutin's argument "that the statutory phrase 'another offense arising out of the same set of circumstances' should be read to mean, 'another [enumerated predatory] offense arising out of the same set of circumstances.' " *Id.* at 716 (alteration in original). Beyond that holding, we did not comment on which conviction offenses "arise out of the same set of circumstances" as charged predatory offenses. Instead, we simply held "that the offense of third degree assault arose out of the same set of circumstances that supported the charge of criminal sexual misconduct in the third degree" because the defendant "admitted ... that the circumstances were aggravated by the fact that he had sexual intercourse with [the victim] after assaulting her and inflicting substantial bodily harm." *Id.* at 716 n. 4. *Boutin* thus provides no useful guidance in this case. Here, the defendants did not admit to any arguably predatory act.

▆▆ We find the answer to the issue in this case in the text of Minn.Stat. § 243.166. The "same set of circumstances" provision in the statute requires registration where the same general group of facts gives rise to both the conviction offense and the charged predatory offense. In other words, the circumstances underlying both must overlap with regard to time, location, persons involved, and basic facts. Although the conviction offense need not be based on identical facts to the charged predatory offense, the facts underlying the two must be sufficiently linked in time, location, people, and events to be considered the "same set of circumstances."

The district court and the court of appeals read the statute more broadly than its language permits. Contrary to the analysis of those courts, the legislature did not choose to require registration where a predatory offense charge and a conviction offense arise from "related circumstances," nor where the two share a single "related circumstance." Registration is mandated only where the two offenses arise from one "same set of circumstances."

▆▆ Here, the kidnapping allegations might be related to the prior drug crime, but the stipulated record reveals at most one single common circumstance—payment of a debt from the drug sale. The drug sale was complete upon transfer of the drugs on April 6. *See* Minn.Stat. § 152.01, subd. 15a (2008) (defining "sell" to include, among other things, "give away, barter, deliver, [and] exchange"). No further circumstances were required to establish culpability for the drug sale, and the stipulated facts underlying the drug conviction did not mention the alleged kidnapping. Different circumstances gave rise to the kidnapping charge, which was based on events that occurred 10 days later, in a different place, involving a slightly different group of people.

The events of April 16 included the alleged confinement of two people in a garage for the purpose of collecting a debt. Under the plain language of the statute, a predatory offender registration requirement may not rest on so tenuous a link as the source of that debt—a prior completed drug transaction that happened to result in a conviction. We therefore hold that the defendants in this case are not subject to the predatory offender registration requirement.

Reversed.