*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0421, A14-0751**

State of Minnesota,
Respondent,

vs.

Michael James Larson,
Appellant.

**Filed December 29, 2014
Reversed and remanded
Hooten, Judge**

St. Louis County District Court
File No. 69DU-CR-13-3130

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Jessica J. Fralich, Assistant County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant challenges the district court's order requiring him to register as a predatory offender, contending that the charged predatory offenses and the three non-

predatory offenses of which he was convicted do not arise from the same set of circumstances. Because the offenses do not arise from the same set of circumstances, we reverse the district court's registration decision.

**FACTS**

The facts are undisputed. Appellant Michael James Larson was in a romantic relationship with K.A.S. They had two children together and shared a residence. The two had a tumultuous relationship. Among other things, K.A.S. told police that Larson would frequently threaten to burn down their residence "in order to get her to do things and make her fearful of him."

According to the complaint, Larson forced K.A.S. to have sex with him while they were both in the living room at their residence on the morning of July 23, 2013.[1] Later that same day, between 3:06 p.m. and 5:51 p.m., Larson sent a series of 50 text messages to K.A.S. in which he threatened to set their house on fire if she did not buy him alcohol. According to the complaint, some of the messages included: "FD will be here in 5," "smoking," "smoking last chance," and "hurry, foggy looking." K.A.S. eventually bought alcohol for Larson in response to these messages. K.A.S. left the residence on July 24 with the couple's two children. On July 26, between 3:00 a.m. and 3:16 a.m., Larson sent another series of text messages to K.A.S., saying that she was "not taking [him] seriously" and asking her to "[a]nswer please." Later that same morning, at 11:47 a.m., Larson sent her a text message saying "Babe, our house is on fire."

---

[1] According to the complaint, Larson told police the sexual conduct occurred the morning of July 24, but, on appeal, both parties agree that the alleged sexual conduct took place on the morning of July 23.

The shared residence was set ablaze the morning of July 26. When officers arrived at the scene and interviewed Larson, he initially denied having intentionally started the fire. But after a canine trained to detect accelerants alerted to him, Larson told investigators that he had poured gasoline at the fire's points of origin and lit the gasoline with a lighter. Larson contended that he was under the influence of alcohol and morphine at the time. The residence was a complete loss due to the fire, and nearby property sustained minor damage as well.

In connection with the fire and preceding events, prosecutors charged Larson with first-degree arson, third- and fourth-degree criminal sexual conduct, felony stalking, pattern of stalking conduct, and felony domestic assault. He eventually entered into a plea agreement in which the state agreed to dismiss the criminal sexual conduct and domestic assault charges and modify the pattern of stalking conduct charge to felony stalking; in exchange, Larson agreed to plead guilty to two counts of felony stalking, one count of first-degree arson, and accept a prison sentence of 100 months. The district court held a plea hearing on October 30, 2013, at which Larson pleaded guilty to the arson and stalking charges. At the sentencing hearing, Larson brought a motion to withdraw his plea. The district court denied Larson's motion and sentenced him to 18 months' imprisonment for each stalking conviction and 64 months' imprisonment for the arson conviction, with the sentences to run consecutively for the agreed-upon total of 100 months. Larson appealed.

The Department of Corrections later advised all parties that Larson had not been given notice of his registration requirement, and the district court convened a review

hearing to determine whether Larson would be required to register as a predatory offender. The district court ultimately ordered Larson to register, reasoning that "all of the charged and convicted offenses were born from the same tactics of intimidation used by [Larson] towards the same victim," and that the circumstances were sufficiently linked to require registration. Larson appealed from the district court's order, and consolidated this case with his prior appeal.

## D E C I S I O N

The only issue raised by Larson in his consolidated appeal is that the district court erred in ordering him to register as a predatory offender. Although some discrepancies exist in the record, in their briefs the parties rely largely upon the same set of allegations drawn from the complaint and plea hearing. Because there is no dispute regarding the material facts in this case, de novo review is appropriate in applying the registration statute to the facts. *State v. Lopez*, 778 N.W.2d 700, 705 (Minn. 2010).

The purpose of section 243.166 is to aid law enforcement investigations through creation of a predatory offender registry. *State v. Ulrich*, 829 N.W.2d 429, 430 (Minn. App. 2013). Persons are required to register as predatory offenders if:

> (1) The person was charged with or petitioned for a felony violation of or attempt to violate . . . any of the following, and convicted of or adjudicated delinquent for that offense or *another offense arising out of the same set of circumstances*:
>
> (iii) criminal sexual conduct under section . . . 609.344; 609.345 . . . .

Minn. Stat. § 243.166, subd. 1b(a)(1)(iii) (2012) (emphasis added). The "same set of circumstances" provision means that registration is required "where the same general

4

group of facts give rise to both the conviction and the charged predatory offense." *Lopez*, 778 N.W.2d at 706.

Larson was charged with third- and fourth-degree criminal sexual conduct in violation of Minnesota Statutes sections 609.344, subdivision 1(c) (2012) and 609.345, subdivision 1(c) (2012), both of which are predatory offenses. S*ee* Minn. Stat. § 243.166, subd. 1b(a)(1)(iii). But Larson ultimately pleaded to and was convicted of three other non-predatory offenses—arson and two counts of stalking. The point of contention between the parties is whether any of the conviction offenses arise out of the "same set of circumstances" as the charged criminal sexual conduct. Minn. Stat. § 243.166, subd. 1b(a)(1). In order to evaluate whether any of the offenses arise from the "same set of circumstances," we first look at the circumstances "required to establish culpability" for each conviction, as well as the circumstances underlying the alleged predatory offense. *Lopez*, 778 N.W.2d at 706.

To establish culpability for the two stalking convictions, the state would have had to prove that Larson "kn[ew] or ha[d] reason to know [he] would cause the victim under the circumstances to feel frightened, threatened, oppressed, persecuted, or intimidated" by "manifest[ing] a purpose or intent to injure the person [or] property . . . of another by the commission of an unlawful act." Minn. Stat. § 609.749, subds. 1, 2(1) (2012). The circumstances established at Larson's plea hearing supported two instances of stalking. The first was on July 23, when Larson sent a series of 50 text messages to K.A.S. in less than three hours in which he threatened to burn their house down if she did not buy him alcohol. The second instance was three days later, on July 26, when he sent more text

5

messages to K.A.S., including one message telling her that the house was on fire. From the record, it is clear that the district court was relying only on these events in finding Larson guilty of stalking. During the plea hearing, the prosecutor asked Larson if the "threat to burn down the residence" and the "repeated text messages" made him guilty of the two stalking offenses, with no mention of the criminal sexual conduct allegations by the parties or the district court.

To convict Larson of first-degree arson, the state would have had to prove that Larson, "unlawfully by means of fire or explosives, intentionally destroy[ed] or damage[d] any building that is used as a dwelling at the time the act is committed, whether the inhabitant is present therein at the time of the act or not." Minn. Stat. § 609.561, subd. 1 (2012). The circumstances establish that sometime on the morning of July 26, Larson poured gasoline throughout his residence, and started the fire on a couch downstairs and in a toddler bed upstairs. Potential victims included K.A.S. and their two children who lived at the residence but were absent at the time of the fire, as well as nearby neighbors who had dwellings in the vicinity of the fire and others who were either passing by the house or were called to combat the fire and rescue victims. Again, there was no indication that the district court relied on the criminal sexual conduct allegations in taking Larson's guilty plea to first-degree arson.

Because the alleged circumstances of the criminal sexual conduct charges were not stated at the plea hearing, they are instead drawn solely from the complaint. K.A.S. indicated that Larson had sex with her against her will while they were both in the living room at their shared residence in the early morning hours of July 23. K.A.S. told the

6

police that Larson grabbed her, forced himself on her, and penetrated her vagina and ejaculated. Larson later confirmed that the two had sex before he left for work in the morning, and claimed the act was consensual.

We next determine whether the circumstances underlying any of the three conviction offenses are "sufficiently linked in time, location, people, and events" to the charged predatory offenses to constitute the "same set of circumstances." *Lopez*, 778 N.W.2d at 706. While the offenses "need not be based on identical facts," the supreme court has warned that mere "related circumstances" between the predatory charged offenses and the conviction offenses are insufficient to trigger the registration requirement. *Id.* The facts of *Lopez* are especially instructive here, as it appears to be the only published decision regarding the registration statute in which the circumstances underlying a predatory charge and a conviction were not united in time and place. *Cf. Gunderson v. Hvass*, 339 F.3d 639, 641, 642–43 (8th Cir. 2003) (providing that assault of which defendant was convicted occurred simultaneous to charged sexual conduct); *Boutin v. LaFleur*, 591 N.W.2d 711, 716 n.4 (Minn. 1999) (holding that offenses arose out of same set of circumstances when defendant admitted the assault offense was aggravated by sexual conduct soon after assault).

In *Lopez*, the defendants were two brothers who twice sold methamphetamine to a confidential informant. *Lopez*, 778 N.W.2d at 702. Ten days after the second drug sale, the brothers allegedly kidnapped the informant and his friend in an attempt to extort payment of debt remaining from the second sale. *Id.* The brothers were charged with aiding and abetting kidnapping and a controlled substance crime, but the kidnapping

7

charges were dismissed by the state and they were convicted of only the controlled substance offense. *Id.* at 703. This court[2] held that the kidnapping charges arose from the "same set of circumstances" as the controlled substance offense for purposes of the registration statute, because the offenses were related by "the prospect of financial gain" which "drives the trafficking in controlled substances" and connected the offenses as an "overall, intra-related transaction." *Lopez*, 764 N.W.2d at 610; *see also State v. Lopez*, No. A08-0100, 2009 WL 749007, at *3–4 (Minn. App. Mar. 24, 2009) ("The same conduct and motive . . . gave rise to the [offenses]."), *rev'd*, 778 N.W.2d at 700.

On appeal, the supreme court reversed the registration requirement for the Lopez brothers. *Lopez*, 778 N.W.2d at 707. The court held that only a "single common circumstance," payment of a drug sale debt, united the offenses. *Id.* at 706. "No further circumstances were required to establish culpability for the drug sale, and the stipulated facts underlying the drug conviction did not mention the alleged kidnapping." *Id.* The differences in time (ten days), location, and people involved in the offenses were sufficient to preclude registration when the only connection between offenses was "so tenuous a link as the source of [the] debt" that led to the kidnapping. *Id.* at 707.

The events in this case have a similar "tenuous" link: Larson's harassment of K.A.S. The state argues that Larson's alleged criminal sexual conduct "was the opening act of a three-day campaign of fear and intimidation," echoing the district court's conclusion that "all of the charged offenses were born from the same tactics of

---

[2] The Lopez brothers appealed separately to this court, and we affirmed in separate opinions. Their cases were consolidated on review by the supreme court.

intimidation" used by Larson against K.A.S. But these arguments repeat the line of reasoning rejected in *Lopez*. As was the case in *Lopez*, the circumstances required to establish culpability for any one of Larson's stalking and arson convictions are wholly separate from any of the facts underlying the alleged criminal sexual conduct, as evidenced by the absence of those facts in the plea hearing record. The progression of events simply does not connect either the stalking or arson conduct to the alleged criminal sexual conduct. The alleged criminal sexual conduct was completed well before the stalking began later in the afternoon, and the record provides no indication that the stalking or arson were connected to or motivated by the alleged criminal sexual conduct. Likewise, nothing in the complaint provides that Larson used the threat of arson or stalking in order to perpetrate the alleged sexual assault. While Larson's general pattern of intimidation toward K.A.S. may connect the offenses, *Lopez* instructs us that more than a common motive is required to meet the "same set of circumstances" test. *Id.* at 706.

A further examination of the time, location, and people involved show that the circumstances lack the necessary "overlap" to sufficiently link the offenses. *See id.* First, the offenses happened in separate timeframes. The alleged sexual conduct began and ended at the shared residence on the morning of July 23. Several hours later, at 3:06 p.m., Larson began sending text messages to K.A.S. that were unrelated to the criminal sexual conduct—he was threatening arson and demanding she buy him alcohol. The second text message conversation and arson occurred three days later. While this passage of time is less extensive than the ten days in *Lopez*, the temporal difference here is much

9

greater than the near-simultaneous conduct that was alleged in *Gunderson* and *Boutin*. *Gunderson*, 339 F.3d at 641; *Boutin*, 591 N.W.2d at 714. There is no similar temporal and causal link between the alleged sexual assault and any of the three convictions in this case.

Because of the nature of the relationship between Larson and K.A.S., there is some overlap in location regarding the arson offense. The two shared a home, and it is logical that the residence would be the site of any alleged criminal sexual conduct as well as the target of arson. But, neither instance of stalking necessarily took place in the residence. Larson stalked K.A.S. via text message, and while the record is unclear where the parties were during those contacts, K.A.S. had left the residence prior to receiving the second set of text messages. And given the nature of the communication, it is highly unlikely that they would have both been at the residence during the first exchange of text messages.

Another circumstance relates the two stalking convictions and the predatory offenses due to the abusive relationship: K.A.S. was the victim of both the alleged criminal sexual conduct and the stalking. But that is not true of the arson. One of the "different circumstances g[iving] rise to the kidnapping charge" in *Lopez* was the "slightly different group of people" involved in that offense, as compared to the controlled substance conviction. *Lopez*, 778 N.W.2d at 706. Here, as in *Lopez*, potential victims of the arson were different and more numerous: K.A.S., the couple's two children, nearby neighbors and passersby were all put at risk due to the fire, and fire and rescue personnel.

10

The *Lopez* court cautioned that "related circumstances" between offenses are not sufficient to require registration. *Id.* The record contains evidence that Larson engaged in a general pattern of harassment against K.A.S. over the course of their relationship. But, this related pattern of harassment is insufficient under *Lopez* to satisfy the requirement that any of Larson's convictions of stalking and arson and the alleged sexual conduct arise out of the "same set of circumstances" and are "sufficiently linked in time, location, people, and events." *See id.* We reverse the district court's decision requiring Larson to register as a predatory offender and remand for the district court to modify its sentencing order accordingly.

**Reversed and remanded.**