*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2261**

State of Minnesota,
Respondent,

vs.

Carl Antonio Wilks,
Appellant.

**Filed December 29, 2014
Affirmed
Rodenberg, Judge**

Ramsey County District Court
File No. 62-CR-12-7746

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant Carl Antonio Wilks challenges his conviction for two counts of second-

degree assault with a dangerous weapon, arguing that the district court erred in declining

to instruct the jury on self-defense. He also challenges the district court's requirement that he register as a predatory offender. We affirm.

## FACTS

Appellant was charged with three separate counts arising from the events of September 19, 2012 at 598 Thomas Avenue in St. Paul. He was charged with kidnapping in violation of Minn. Stat. § 609.25, subd. 1(3) (2012) for allegedly detaining C.D.; second-degree assault with a dangerous weapon in violation of Minn. Stat. § 609.222, subd. 1 (2012), also against C.D.; and second-degree assault with a dangerous weapon in violation of Minn. Stat. § 609.222, subd. 1 (2012), against C.R.

On September 21, 2012, appellant met his friend and colleague Joey Sharply at Sharply's home, 598 Thomas Avenue, where appellant rented a room from Sharply, but did not reside. Their plan was to complete a furniture-moving job for S.J. and for which they had already been paid $75. S.J. and an unidentified man came to the house that day and demanded return of the $75, claiming that the furniture no longer needed to be moved. T.P., Sharply's girlfriend and a resident of the home, testified that she was sleeping and woke up to hear appellant and the unidentified man arguing and the man demanding money from appellant. She got up and asked the unidentified man to leave. She later testified that he "cussed [her] out and he -- he started talking about he'll air this b***h out" and that he then pulled out a pistol and aimed it toward T.P. and her children and grandchildren who were present. Appellant gave the unidentified man the $75, and the man "continue[d] to walk down the side of the house in front of the house,"

2

continuing to say that he would "air this b***h out." T.P. then called the police to report the incident, but the police did not locate the man.

Later that same afternoon, appellant was talking to several men in the kitchen of the 598 Thomas Avenue house and he referred to S.J. as a b***h. S.J. was a close friend of C.D. who was talking to several women in the living room. C.D. objected to appellant referring to S.J. as a "b***h" and asked appellant to stop using such language. A heated argument ensued between appellant and C.D. C.D. testified that appellant told her three times, "You not gonna make it outta here." Appellant went into the kitchen and C.D. testified that he was then "calm" and stopped yelling. C.D. testified that appellant was in the kitchen and calm for "like two, three minutes."

Other people were in the living room and in the kitchen during all of this, including appellant, Sharply, T.P., and two of C.D.'s daughters. During the argument, C.D.'s daughter, A.D., ran out of the house to her grandmother's house across the street where her step-father and other family members and friends were having a barbeque. A.D. testified that she "ran out the door because [she] felt scared, and . . . went to go get [her] family mates" because she "thought something bad was going to happen." In response to A.D., C.R. (her stepfather) together with other family members and friends went across the street to 598 Thomas Avenue, where the argument had occurred.

What happened next is disputed. C.R. testified that when he arrived at 598 Thomas Avenue the door was shut, but then after shouting that those inside the house should open the door, the door opened and C.R. saw his family members. C.R. testified that the door shut again and he began kicking and hitting the door and yelling at appellant

3

to open the door. C.R. testified that the door "flew wide open" and appellant was standing in the kitchen pointing a gun at C.R. C.R. testified that he then told appellant, "I just want my family back" and waved C.D. and her daughter out of the house. Testimony from multiple witnesses indicated that C.D. and her daughter walked to the door and that C.R. backed out after them and they all returned to the house across the street.

There are multiple and varying accounts concerning the number of people outside the door of 598 Thomas Avenue, whether the door was forced open or opened from the inside, and whether appellant had a gun. Estimates of the size of the group outside the door ranged from five to twelve people. All witnesses testified that C.R. was trying to get the door open. C.R. and several other witnesses testified that the door opened from the inside. Sharply, who testified that he was inside the house when C.R. arrived, claimed that C.R. "forced his way in" because "nobody opened the door." While most of the trial testimony placed appellant in the kitchen with a gun aimed at the door and C.R., two defense witnesses testified that they did not see appellant with a gun. Sharply testified that appellant was "[j]ust standing there" when C.R. opened the door and that appellant told C.R. that "he could take his family, you know, so his wife by then had came to the kitchen, and they left."

Appellant was questioned by St. Paul Police Officer John Wright later that night. Appellant told the officer he had not touched a gun that day.

Sharply also testified that, during the argument with appellant, C.D. threatened appellant that she would arrange to have her boyfriend, C.R., beat up appellant. Sharply testified that C.D. "told him that she wasn't going to worry about [the argument] because

4

she was going to have her boyfriend beat the, you know, mess out of him." T.P. testified that A.D. had gone across the street at the direction of C.D., to get C.R. to "come fight" appellant.

After a three-day jury trial, the jury found appellant not guilty of kidnapping but guilty of both second-degree assault counts. Appellant was sentenced to 36 months in prison for each assault conviction, the sentences to run concurrently. He was also required by the district court to register as a predatory offender because he was convicted of an offense arising from the same set of circumstances as the kidnapping charge. Minn. Stat. §§ 243.166, subd. 1b(a)(1) (2012). This appeal followed.

## D E C I S I O N

Appellant argues that the district court erred when it declined his request that the jury be instructed on self-defense. We first note that appellant contends on appeal that he requested the district court to instruct the jury on the self-defense instruction "regarding all three counts." The record does not support this contention. Appellant requested a self-defense instruction that "would only apply in this case to [C.R.,] who was the person kicking in the door. It wouldn't apply to [C.D.], so we'd ask the Court to include that instruction, maybe include language to say that as it applies to [C.R.]." Because appellant requested a self-defense instruction concerning only C.R., we separately analyze the issues raised on appeal concerning the self-defense instruction.

Appellant requested a self-defense instruction for count three, the charge of second-degree assault against C.R. We review the district court's denial of that requested instruction for an abuse of discretion. *See State v. Kuhnau*, 622 N.W.2d 552, 555 (Minn.

5

2001) (stating that "when a district court exercises its discretion and refuses to give a requested instruction, no error results if no abuse of discretion is shown"). A district court has "considerable latitude" in selecting language for jury instructions. *State v. Peou*, 579 N.W.2d 471, 475 (Minn. 1998).

A criminal defendant has the burden of production in asserting a claim of self-defense and must provide evidence supporting the claim. *State v. Soukup*, 656 N.W.2d 424, 429 (Minn. App. 2003). A claim of self-defense requires evidence of "(1) an absence of aggression or provocation; (2) an actual and honest belief that imminent death or great bodily harm would result; (3) a reasonable basis existed for this belief; and (4) an absence of reasonable means to retreat or otherwise avoid the physical conflict." *Id.* at 428 (citing *State v. Basting*, 572 N.W.2d 281, 285 (Minn. 1997)). The fourth element is not required when acting in self-defense in one's home. *State v. Glowacki*, 630 N.W.2d 392, 402 (Minn. 2001). Once a defendant has produced evidence to support a self-defense claim, the state has the burden of disproving one or more of the elements beyond a reasonable doubt. *Basting*, 572 N.W.2d at 286. The district court in this case observed that it was "within the discretion of . . . the Court to give instructions" and that it did "not believe there is evidence to support the giving of [the self-defense] instruction for either [C.R.] or [C.D.]."

Appellant contends that he has produced evidence sufficient to support the first element of self-defense because there is evidence demonstrating that appellant was not the initial aggressor in the encounter with C.R. Respondent argues that appellant's threats and argument with C.D. were the cause of C.R.'s attempt to enter the house, and

6

that appellant was the initial aggressor in that argument. Appellant was the initial aggressor in the heated argument between appellant and C.D., which prompted the encounter with C.R. Appellant called C.D.'s close friend a "b***h" and threatened C.D. The district court was within its discretion in concluding that, but for the argument that appellant had with C.D. and appellant's threatening C.D., there would have been no encounter with C.R. at the door of 598 Thomas Avenue. Moreover, C.R. came to the door unarmed. The district court acted within its discretion in concluding that C.R. was not the aggressor.

Appellant argues that the evidence demonstrates that he had an actual and honest belief that he was in imminent danger of death or great bodily harm, satisfying the second element of self-defense. Appellant, who did not testify at trial, need not provide direct evidence of his state of mind. Rather, "inferences drawn from a person's words or actions in light of all the surrounding circumstances" can provide evidence to support the claim. *State v. Johnson*, 719 N.W.2d 619, 630-31 (Minn. 2006). Appellant argues that the incident earlier that day wherein the unidentified man drew a gun on him, saying he would "air this b***h out," along with C.D.'s threats to have C.R. beat up appellant, made appellant fear for his safety. Appellant argues that this series of events would make "any reasonable person, under those circumstances . . . believe that [they were] in imminent danger." C.R. testified that he was "telling [appellant] to open the door" and that when the door opened he told appellant that he just wanted his family back. C.R. also testified that he recognized appellant as someone he knew "from around the neighborhood" and that the two had spoken previously. There is no evidence in the

7

record that C.R. was armed or brandished any weapon at appellant when the door opened. Based on this evidence, the district court acted within its discretion in concluding that appellant knew C.R. posed no threat of harm to appellant. There is no evidence that appellant entertained an honest belief that he was in imminent danger of death or great bodily harm.

Even if the district court were to have concluded that appellant provided sufficient evidence to show that appellant actually believed he was in imminent danger of death or great bodily harm, the third element of self-defense requires that there be reasonable grounds for that belief. To be reasonable, the amount of force used to defend oneself must be limited to that which a reasonable person in the same circumstances would believe to be necessary. *State v. Bland*, 337 N.W.2d 378, 381 (Minn. 1983); *see also State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014) (stating that a person can use "only the level of force reasonably necessary to prevent the bodily harm feared"). Action taken in self-defense must be reasonable "in light of the danger to be apprehended" and must contemplate whether the individual is "being exposed to . . . grave peril at that place or time." *State v. Austin*, 332 N.W.2d 21, 24 (Minn. 1983). The state's witnesses testified at trial that appellant pointed a gun at C.R. from the time C.R. was in the doorway until the time that C.R. and C.D. left the residence. Even if appellant initially thought that the person at the door may have been the unidentified man from earlier that day, as his attorney implied at trial, when the door opened and appellant saw C.R., unarmed, he knew C.R. was not the unidentified man. It was within the district court's discretion to

8

determine that, under these circumstances, it was not reasonable for appellant to believe he was in imminent danger of death or great bodily harm.

In the alternative, and concerning the fourth element, appellant argues that he had no duty to retreat because the 598 Thomas Avenue address was his "dwelling" on account of his having rented a room there and being at the house quite often. But the evidence in the record is uncontradicted that appellant did not live in the house, did not consider it his primary address, and only rented a room there. While the castle doctrine imposes no duty to retreat from one's own home, that doctrine does not extend to places surrounding one's home, to places someone visits regularly, or to common areas. *See Devens*, 852 N.W.2d at 258 (declining to extend the castle doctrine to the hallway of defendant's apartment building); c*f. State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998) (holding that the home where the incident occurred was "indeed [the] place of abode" for the defendant because he owned the house, lived there and in one other home "depending on where he was needed," and also because his Minnesota identification card listed the home as his address). In *Devens*, the supreme court stated that the degree of "exclusive possession and control" is persuasive in defining what spaces are considered a "home" for self-defense purposes. 852 N.W.2d at 259-60. The record does not support that appellant had exclusive possession and control over this house or that he considered the house his home. The district court was within its discretion in concluding that appellant had a duty to retreat because he was not in his own home.[1]

---

[1] The parties disagree on whether, if he had a duty to retreat, appellant could have done so. The availability of routes of retreat does not affect the jury-instruction analysis.

The record supports the district court's decision not to instruct the jury on self-defense concerning the second-degree assault on C.R., and the district court acted within its discretion in denying that requested instruction.

Because appellant did not request a self-defense instruction on the charges of kidnapping and assault of C.D., we review for plain error appellant's argument on appeal that the district court should have given the instruction sua sponte. *See Griller*, 583 N.W.2d at 740 (holding that we review unobjected-to arguments to determine whether there was plain error that affected appellant's substantial rights). Since the jury found appellant not guilty of kidnapping, we need not analyze whether the district court erred in declining to give a self-defense instruction on that charge. Therefore, we consider only whether the district court plainly erred in not instructing the jury concerning self-defense on the charge of second-degree assault against C.D.

To be plain, an error must be obvious or clear. *Johnson v. United States*, 520 U.S. 461, 467, 117 S. Ct. 1544, 1549 (1997). As discussed previously, a district court has "considerable latitude" in selecting language for jury instructions. *Peou*, 579 N.W.2d at 475. And the record must support a claim of self-defense. *Soukop*, 656 N.W.2d at 429. First, the defendant must present evidence of "an absence of aggression or provocation." *Id.* at 428.

Here, there is no evidence that appellant was defending himself against C.D. She was, by all accounts, unarmed and was no physical threat to appellant. The two were arguing, both using coarse language. But there is nothing to support that appellant was

reasonably and actually in fear of great bodily harm.[2]   There was no error, much less plain error, in the district court's not giving a self-defense instruction concerning the charge of second-degree assault against C.D.

Appellant also argues that the district court erred in requiring him to register as a predatory offender because the assault charges did not arise from the same circumstances as the kidnapping charge.  Whether a statute has been properly construed is a question of law, which we review de novo.  *State v. Murphy*, 545 N.W.2d 909, 914 (Minn. 1996).

A person is required to register as a predatory offender when the person was "charged with . . . and convicted of . . . [the triggering charge] or *another offense arising out of the same set of circumstances*."  Minn. Stat. § 243.166, subd. 1b(a)(1) (emphasis added).  Kidnapping, in violation of section 609.25, is an offense requiring registration upon conviction.  *Id.*, subd. 1b(a)(1)(ii).  The conviction required by the statute need not be a conviction of the charge requiring registration, but it must arise from the same set of circumstances as the charge requiring registration.  *Boutin v. LaFleur*, 591 N.W.2d 711, 713 (Minn. 1999).  The offenses must be "sufficiently linked in time, location, people and events."  *State v. Lopez*, 778 N.W.2d 700, 706 (Minn. 2010).  The relationship between the charges must constitute more than "related circumstances" and must share more than one single circumstance.  *Id.*

In *Boutin*, the supreme court found a sufficient nexus between a sexual assault charge resulting in a conviction of third-degree assault because the defendant there

---

[2] And we think it noteworthy in this regard that appellant's trial counsel expressly limited the request for a self-defense instruction to the assault charge concerning C.R.

11

admitted that the "circumstances were aggravated by the fact that [the defendant] had sexual intercourse with [the victim] after assaulting her and inflicting substantial bodily harm." 591 N.W.2d at 716 n.4. Here, appellant argues that the alleged kidnapping and assaults do not arise from the same set of circumstances because of the time lapse between the argument with C.D. and the alleged assaults. But the alleged assaults occurred within two or three minutes of the alleged kidnapping, involved two of the three same individuals (appellant and C.D.) and occurred in the same house. C.D.'s daughter reacted to the argument between appellant and C.D. by running across the street to tell her family that her mother was in trouble. This prompted C.R. to go to 598 Thomas Avenue. The alleged assaults arise from the circumstances created by the alleged kidnapping. As in *Boutin*, the alleged assault was "aggravated" by the heated argument appellant had with C.D. *See id.*; *Lopez*, 778 N.W.2d at 706.

Appellant also argues that there is an insufficient connection between the events because C.R. was involved in the alleged assault, but was not present during the alleged kidnapping. The circumstances "must overlap with regard to time, location, persons involved, and *basic facts*," but "the conviction offense *need not be based on identical facts* to the charged predatory offense." *Lopez*, 778 N.W.2d at 706 (emphasis added). The arrival of other people to the scene of the alleged kidnapping is insufficient to break the nexus created by the overlap in time, location, and basic facts. We conclude that the district court properly required appellant to register as a predatory offender because the assault counts for which he was convicted arose from the same circumstances as the kidnapping charge.

**Affirmed.**